This is a bill to set aside an award of appraisers, as a result of a fire loss sustained by Leo B. Weisgal, in his shop at 587 Broad street, Newark.
The defendant insurance companies designated as their appraiser Harry H. Lieblich, who was engaged in a business similar to that of complainant. The complainant designated his next-door neighbor, Benjamin Hirschberg. The two appraisers chose John J. O'Keefe as the umpire. *Page 492 
The appraisers had several sessions, and at one of them complainant and his attorney were present. The companies' representatives did not appear. The appraisers could not agree, so each wrote out his summary of value and damage and submitted them to the umpire, with whom they had several conferences. The umpire made an award, in which he fixed the total value of the property at $4,911.50 and the loss at $2,947.50, and to this the company's appraiser agreed.
The appraisal clause in the insurance policies reads as follows:
"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay * * *."
The theory on which it is sought to set aside the award may be summarized in the following excerpts from the bill and the brief of complainant:
"That the appraiser and umpire who made said alleged award made absolutely no effort to ascertain the original cost of the property destroyed by the fire described in the complaint, or to what extent said property had depreciated, or was any notice given to the assured of the time and place where the appraisers and umpire were to meet, nor was there any opportunity given to the assured to present any evidence or any facts to said appraisers and umpire upon which to base said award.
"Complainant further showed by disinterested witnesses who had actually inspected the merchandise and fixtures before they were destroyed by fire, that the value of the merchandise and fixtures was very substantially in excess of the value fixed by the one appraiser and the umpire in the award, and that testimony proved that the real value, based on actual evidence, was anywhere from twelve to thirteen thousand dollars." *Page 493 
There is no question as to the fitness or honesty of the umpire and appraisers. Complainant's own appraiser says, "O'Keefe, the umpire, is an honorable man." From the testimony of complainant and his witness Thorner it appears that they parted with $500 for the purpose of hurrying along the appraisal. Who received it does not appear, certainly not the men who signed the award. Defendants contend that on account of this, their own testimony, complainant does not come into equity with clean hands.
While there may be merit in this objection, I think the case can be decided on other grounds.
Complainant's allegations, even if proven, do not constitute a sufficient basis for the setting aside of the award by this court. The law in the matter is well settled, and a few citations only need be mentioned here.
"The proceeding here in not an ordinary arbitration where the parties hear witnesses and appear by counsel and act upon sworn evidence only; but it is strictly an appraisal and ascertainment in a particular manner of the amount of the loss, made by two or three parties, as the case may be, in which they act upon their own judgment with such information as they may obtain in an informal way and in which the appraiser chosen by each party is supposed and expected, in a restrictive sense, to represent the party appointing him, and within reasonable limits to see to it that no legitimate consideration favorable to the party so appointing him is overlooked by the other appraiser." AmericanCentral Insurance Co. v. Landau, 62 N.J. Eq. 93. (Cited with approval in Stout v. Phoenix Association Cp., 65 N.J. Eq. 570.)
"Where arbitrators keep within the terms of the reference and there is no fraud, mistake, misconduct, undue influence or corruption, the award is conclusive on the parties since it is the decision of a tribunal of their own choosing." Richardson
v. Lanning, 26 N.J. Law 130.
"In the absence of misconduct or want of good faith in an arbitrator, the fact that the award seems too high or too low is not ground for judicial interference." Hewitt v. LehighRailroad Co., 57 N.J. Eq. 522. *Page 494 
"Where no fraud is proved against the umpire and one of the appraisers who made the award, the court will not remove the umpire or set aside the award — or the award has been made by an umpire duly appointed and one of the appraisers in accordance with the terms of the policy, the court will not weigh the technicalities of the method of arriving at the award and making the appraisal, when the appraisers and umpire were admittedly competent and no injustice or fraud has been committed."Caledonion Insurance Co. v. North Dutch, 95 N.J. Eq. 496;affirmed, 96 N.J. Eq. 342.
"The modern rule is that awards shall be interpreted favorably and that every reasonable intendment shall be made in their support and the court will expound an award favorably, if possible." Rogers and Brick v. Tatum, 25 N.J. Law 281.
In Dennis v. Standard Fire Insurance Co., 90 N.J. Eq. 419,
which also sought to set aside an appraisement under a standard fire insurance policy, Vice-Chancellor Backes said:
"There is not a jot of evidence of unbecoming conduct upon the part of either the appraisers or the umpire to excite the slightest suspicion that any of them approached their task with ulterior motives, and the impression made on the mind by the testimony is that the three gave careful consideration to the conflicting claims of the parties, and conscientiously reached their verdicts. It was hardly to be expected that the appraisers would agree in all matters. They were partisans, within bounds, but were, nevertheless, unbiased and unprejudiced and disinterested within the meaning of the contract of insurance. Their attitude was that approved of by Vice-Chancellor Pitney inAmerican Central Insurance Co. v. Landau, 62 N.J. Eq. 93,
where he said that `the appraiser chosen by each party is supposed and expected, in a restricted sense, to represent the party appointing him, and within reasonable limits to see to it that no legitimate consideration favorable to the party so appointing him is overlooked by the other appraiser.' The umpire, like the appraisers, is a business man of excellent character and standing, and was peculiarly qualified by long experience in the printing trade to pass judgment upon the value of the articles submitted." *Page 495 
 Richardson v. Lanning, 26 N.J. Law 130, Mr. Justice Potts: "The general rule is that where parties agree to refer a matter to the judgment of others, their judgment is conclusive, unless fraud, collusion, or some plain, palpable mistake upon the face of the award appears, which is certified to or admitted by the arbitrators."
I will advise a decree dismissing the bill.